Nicholas W. Armstrong,
Cal. Bar No. 270963
PRICE ARMSTRONG LLC
2226 1st Ave S Suite 105
Birmingham, AL 35233
Phone: 205.706.7517
Fax: 205.209.9588
Email: nick@pricearmstrong.com

Mark N. Todzo
Cal. Bar No. 168389
LEXINGTON LAW GROUP LLP
503 Divisadero St
San Francisco, CA 94117
Phone: 415.913.7800
Fax: 415.759.4112
Email: mtodzo@lexlawgroup.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| RONALD GARCIA, | Case No. _____ |
| Plaintiff(s), | **COMPLAINT** |
| v. | CLASS ACTION |
| HARLEY DAVIDSON MOTOR COMPANY, INC., | 1.  Unlawful, Unfair, and Fraudulent Business Practices (B&P Code § 17200 *et seq.*); |
| Defendant(s). | 2.  Breach of Express Warranties; |
| | 3.  Breach of Implied Warranty; |
| | 4.  Violation of Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*); and |
| | 5.  Unjust Enrichment |

## CLASS ACTION COMPLAINT

Plaintiff Ronald Garcia, on behalf of himself and others similarly situated, brings this action against Defendant Harley Davidson Motor Company, Inc. ("Harley-Davidson"), and alleges as follows:

### Introduction

1.     This action arises from Harley-Davidson's sale of tens of thousands of motorcycles with a hidden and dangerous defect in their antilock braking systems ("ABS"). These motorcycles all have a defective wiring harness that, under normal operation, is prone to fail, causing the ABS to cease functioning without warning or any obvious sign to the rider.

2.     Harley-Davidson instructs its riders to use different, nearly opposite braking techniques in emergency situations, depending on whether they have ABS-equipped motorcycles or not. The braking technique Harley-Davidson recommends for an ABS-equipped motorcycle, when used on a non-ABS motorcycle, could, in Harley-Davidson's own words, cause a locked wheel that "can cause loss of vehicle control . . . result[ing] in death or serious injury."

3.     Despite having known of the wire-breakage problem since at least 2008, despite knowing that the operator of a motorcycle with a defective ABS wiring harness would not have any immediate signal that his motorcycle lacked ABS, and despite knowing that a rider following ABS braking instructions on a motorcycle lacking it could apply the brakes in such a way as to cause serious injury or death, Harley-Davidson has taken no action to notify owners and operators of these motorcycles about this defect, or to repair, replace, repurchase, or upgrade affected motorcycles.

### Parties

4.     Plaintiff Ronald Garcia is a resident of Concord, California, who purchased a 2008 Harley-Davidson Street Glide motorcycle from a Harley-Davidson dealer in Oakland, California.

5.     Defendant Harley-Davidson is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.

**Jurisdiction and Venue**

6.    This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The amount in controversy between the proposed Class as defined herein and the Defendant exceeds $5,000,000, exclusive of interest and costs. The Class as defined herein consists of individuals from 47 different states.

7.    This Court has personal jurisdiction over Harley-Davidson in this matter. Plaintiff Ronald Garcia purchased the Harley-Davidson Motorcycle that is the subject of this suit in California from Defendant at its Oakland, California dealership.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Plaintiff Ronald Garcia is a resident of this district, many of the acts and transactions giving rise to this action occurred in this district, and because: a. Harley-Davidson is authorized to conduct business in this district, and has availed itself of the laws and markets within this district through the promotion, marketing, distribution, and sale of its products in this district; b. does substantial business in this district; and c. is subject to personal jurisdiction in this district.

9.    **Intradistrict Assignment (L.R. 3-2(c) and (d) and 3-5(b))**:  This action arises in Alameda County because a substantial part of the events which give rise to the claims asserted herein occurred in Alameda County.

**Class Action Allegations**

10.    The Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure, and proposes two classes: a Nationwide Class, and a California Subclass.

11.    The proposed Nationwide Class consists of:

> All individuals and entities in the United States who purchased or leased a model year 2008 – 2010 Harley-Davidson Touring or CVO Touring model motorcycle (the "Class Motorcycle").

12.    The proposed California Subclass consists of:

> All individuals and entities in the state of California who purchased or leased a model year 2008 – 2010 Harley-Davidson Touring or CVO Touring model motorcycle (the "Class Motorcycle").

CLASS ACTION COMPLAINT                    CASE NO.:_____

13.     Excluded from both proposed classes are those who purchased the products for resale; members of the federal judiciary and their relatives; and Defendant's officers, directors and employees. Also excluded are individuals and entities in Arkansas, Florida, and Georgia.

### Typicality and Numerosity

14.     The claims of the named Plaintiff, Ronald Garcia, are typical of the claims of the classes. Plaintiff's claims are typical of those of other members of the classes as there are no material differences in the facts and law underlying the claims of Plaintiff and the classes, and by prosecuting his claims Plaintiff will advance the claims of class members.

15.     Upon information and belief, while the exact number of class members is unknown to the Plaintiff now, Plaintiff believes and is informed that each putative class contains thousands of members. The potential class members are so numerous that joinder of all members of the classes is impracticable.

### Commonality

16.     This action involves questions of fact common to all class members because all class members purchased or owned Harley-Davidson motorcycles containing the defective ABS.

17.     This action involves question of law common to all class members because Harley-Davidson's deceptive trade practices have violated Plaintiff's and class members' common law and comparable statutory rights in uniform ways.

### Predominance of Common Questions of Law and Fact

18.     The common questions of law and fact among all class members predominate over any issues affecting individual members of the class, including but not limited to:

- whether the alleged conduct constitutes violations of the laws asserted herein;
- whether the Class Motorcycle is defective;
- whether Harley-Davidson misrepresented material facts regarding the Class Motorcycle;
- whether Plaintiff and class members are entitled to declaratory and injunctive relief;

- whether Plaintiff and class members have sustained monetary loss and the proper measure of that loss, and;

- whether Harley-Davidson's acts and omissions warrant punitive damages.

19.    The questions of law and fact common to the class members, some of which are set out above, predominate over any questions affecting only individual class members.

**Superiority**

20.    Class treatment of the claims set forth herein is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Absent a class action, a multiplicity of individual lawsuits would be required to address the claims between class members and Harley-Davidson, and inconsistent treatment and adjudication of the claims would likely result.

21.    The litigation and trial of Plaintiff's claims is manageable. The defects affecting the subject 2008-2010 Harley-Davidson Touring model motorcycles were common across all models and model years of the subject motorcycles, and Harley-Davidson maintains records making these motorcycles, and their purchasers, easily identifiable. The consistent provisions of the relevant laws, and the readily ascertainable identities of the subject motorcycles and many class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

22.    Unless a class-wide injunction is issued, Harley-Davidson will continue to ignore and cover up information concerning the dangerous defect affecting all the subject Harley-Davidson motorcycles, and the members of the Class will continue to be deprived of a fix to this dangerous problem, and potentially remain endangered.

**Harley Has Acted And Refused To Act On Grounds**
**Applicable To The Classes As A Whole**

23.    Under Federal Rule of Civil Procedure 23(b)(2), Harley has acted and refused to act on grounds that apply generally to the classes as a whole, and thus injunctive relief and declaratory relief is appropriate.

24.    The conduct at issue, Harley practices in marketing, selling, and supporting defective Touring and CVO Touring model motorcycles, apply to all putative class members equally. This conduct is ongoing. A finding that such conduct is unlawful and changes to those practices will apply to all class members equally.

## Factual Allegations

**Allegations common to all class members**

25.    Harley-Davidson manufactures motorcycles for sale to the public.

26.    Harley-Davidson added an anti-lock braking system ("ABS") to its 2008 model year Touring and CVO Touring model motorcycles, which went on sale to the public in September 2007.

27.    Harley-Davidson charged significantly more for motorcycles with ABS as compared to previous, non-ABS bikes. For instance, the list price of a 2007 Harley-Davidson Road King Classic was $18,255.[1] The list price of a 2008 Harley-Davidson Road King Classic with ABS was $19,320.[2] Harley-Davidson suggested a list price of $795 for the ABS option on its Touring and CVO Touring motorcycles.[3]

28.    Harley-Davidson advertised the benefits of its ABS to its customers, claiming that they were superior to other braking systems, especially in emergencies:

**NEW ON TOURING MODELS FOR 2008**

New Brembo Brakes with available Anti-Lock Braking System (ABS): New high-performance Brembo brakes and a factory-installed ABS option are

---

[1]    Pricing information obtained from NADA Bluebook Price Guides, found at https://www.nadaguides.com/Motorcycles/2007/Harley-Davidson/FLHRC-ROAD-KING-CLASSIC-1584cc/Values, last visited April 11, 2019.

[2]    *Id.* at https://www.nadaguides.com/Motorcycles/2008/Harley-Davidson/FLHRC-ROAD-KING-CLASSIC-1584cc/Values, last visited April 11, 2019.

[3]    *Id.*

available on all 2008 Touring models. Incorporating the latest in braking technology, the new Harley-Davidson Brembo brakes offer consistent braking and stopping power under all operating conditions. Besides improved brake performance and feel, the Touring motorcycles retain their distinctive Harley-Davidson style. This world class braking system comes to the Touring line with proven capability directly from the VRSC line of performance custom motorcycles. The all-new ABS feature is designed to help the rider maintain control during emergency stopping situations, especially those that happen in less-than-ideal conditions.[4]

29.     Harley-Davidson instructed its riders to brake differently depending on whether they were riding a motorcycle with or without ABS. On motorcycles **with** ABS, Harley-Davidson instructed riders facing an emergency braking situation to maintain continuous braking pressure on the brakes until the motorcycle had slowed sufficiently, and told them "[d]o not modulate or 'pump' the brake controls. The wheels won't lock until the end of the stop."[5]

30.     On motorcycles **without** ABS, Harley-Davidson instructed riders facing an emergency to release and reapply the brakes when a wheel began to skid.[6] Harley-Davidson warned riders on non-ABS motorcycles **not** to brake strongly enough to lock the wheels: "A locked wheel will skid and can cause loss of vehicle control, which could result in death or serious injury."[7]

31.     Put simply, Harley-Davidson instructed its riders to use different, functionally opposite braking techniques in emergency situations, depending on whether they had ABS-equipped motorcycles or not. The braking technique Harley-Davidson recommended for an ABS motorcycle, when applied on a non-ABS motorcycle could, in Harley-Davidson's own words, result in a locked wheel that "can cause loss of vehicle control . . . result[ing] in death or serious injury."

32.     As early as 2008, Harley-Davidson learned through its own internal testing, and through customer complaints relating to ABS issues that were not disclosed to the public, that

---

[4] 2008 Harley-Davidson FLHR Road King Owner's Manual, p. 6 (obtained from https://ownersmanuals2.com/harley-davidson/road-king-classic-2008-owners-manual-66565, last visited April 11, 2019)
[5] *Id.*, p. 39.
[6] *Id.*, p. 38.
[7] *Id.*, pp. 32, 38, and 39.

CLASS ACTION COMPLAINT                              CASE NO.:_____

the ABS on its Touring and CVO Touring model motorcycles was malfunctioning due to wire breakage in the ABS wiring harness.

33.     In Harley-Davidson's own durability testing of Touring Models in 2008, it discovered that wires connecting the front wheel-speed sensor to the motorcycles' engine control unit (ECU) – a critical component of the ABS – were prone to breakage during normal operation.

34.     Harley-Davidson's testing of the 2008 Touring models revealed that the normal motion of turning the front wheel back and forth would lead to breakage in the wires connecting the speed sensor to the ECU.

35.     Harley-Davidson knew that, if those wires broke, the ABS would become non-functional, leaving the motorcycle with only standard "foundation" braking—requiring a completely different set of braking techniques to stop the motorcycle in an emergency.

36.     Upon information and belief, Harley-Davidson also knew that, if the wires connecting the wheel-speed sensor to the ECU broke, there would be no obvious signal to the rider that the motorcycle's braking system was no longer functioning as an antilock system.

37.     Upon information and belief, a rider with a malfunctioning ABS could face an emergency, apply the brakes exactly as instructed by Harley-Davidson, and, with no notice that his motorcycle had a non-functioning ABS, lock the wheels – potentially causing a sudden, violent, loss of control that, as Harley-Davidson warned, could result in death or serious injury.

38.     Harley-Davidson received complaints of ABS problems from private citizens and from municipalities whose motorcycle law enforcement officers had experienced ABS failures. These complaints were not made known to the public.

39.     Upon information and belief, Harley-Davidson began working on an improved wiring harness that would resist the wire breakage problems found on its 2008 Touring and CVO Touring motorcycles soon after receiving these initial reports. But Harley-Davidson continued to sell these defective motorcycles to the public and to law enforcement agencies with the existing, defective wiring harness, while issuing no notice to customers of that defect, in 2008, 2009, and 2010.

CLASS ACTION COMPLAINT                              CASE NO.:_____
PAGE.8 OF 25

40.     While Harley-Davidson was working on this design change, it instructed its dealers to continue to service motorcycles with the existing, defective, ABS wiring harness.

41.     Meanwhile, Harley-Davidson continued to sell tens of thousands of motorcycles with a defective ABS to an unsuspecting public. Harley-Davidson sold tens of thousands more defective Touring and CVO Touring motorcycles in both 2009 and 2010, despite learning of the problem in 2008.

42.     Harley-Davidson's 2009 and 2010 Touring and CVO Touring model motorcycles contained the same defective ABS wiring harness as its 2008 models, yet Harley-Davidson changed nothing in its instructions to its riders, in its communications to consumers, in its service bulletins to its dealers, nor in its dealings with state and federal safety regulatory agencies.

43.     Despite knowing that these expensive, powerful motorcycles contained a hidden and dangerous defect in their braking systems that could lead to serious injury or death, Harley-Davidson did nothing whatsoever to notify its owners or dealers of these issues, or to retrofit affected motorcycles to alleviate this problem in 2009 or 2010.

44.     Finally, in 2011, Harley-Davidson began selling motorcycles with a retrofitted ABS wiring harness designed to alleviate the problems plaguing the 2008-2010 models.

45.     In 2016, the National Highway Traffic Safety administration began investigating complaints related to ABS problems in many Harley-Davidson motorcycles, including the 2008-2010 Touring and CVO Touring models. These complaints stemmed from a defect in those motorcycles' hydraulic control units: if the brake fluid on affected motorcycles was not flushed every two years, the ABS in those motorcycles could fail due to a clogged valve in the ABS hydraulic control unit.

46.     Unlike the failure of Harley-Davidson's defective ABS wiring harness, the hydraulic control unit defect in these motorcycles was easy to detect: when it occurred, the motorcycle's brake lever would feel hard, and be difficult or impossible to operate. Thus, riders of a motorcycle affected with this hydraulic control unit defect would have an obvious and immediately apparent reason to suspect that their brakes were not functioning properly.

47.     At NHTSA's urging, in 2018 Harley-Davidson began a nationwide recall of its 2008-2010 Touring and CVO Touring motorcycles to correct the issue relating to the ABS hydraulic control unit.

48.     Critically, despite issuing a nationwide recall of over 175,000 motorcycles to correct a hydraulic defect in their braking systems, Harley-Davidson took no steps whatsoever to address the separate, dangerous problem stemming from breakage of wires in the wiring harness of the 2008-2010 Touring and CVO Touring motorcycles' ABS during this recall. This course of conduct worked to obfuscate the wire breakage defect, making it practically impossible for Plaintiff and Class Members to discover it.

49.     Despite having known of the wire-breakage problem since at least 2008, despite knowing that the operator of a motorcycle with a defective ABS wiring harness would not have any immediate signal that his motorcycle lacked ABS, and despite knowing that a rider following ABS braking instructions on a motorcycle without a functioning ABS system could apply the brakes in such a way as to cause serious injury or death, Harley-Davidson took no action to notify owners and operators of these motorcycles about this defect.

50.     To this day, Harley-Davidson has not issued any public notice, owner communication, warranty modification, buyback program, or recall for the tens of thousands of 2008-2010 model-year Touring and CVO Touring model motorcycles with a defective ABS system, many of which are still on the roads today, driven by unsuspecting members of the public and law enforcement agencies.

51.     Owners and operators of these defective Harley-Davidson motorcycles still believe they are riding motorcycles with functioning anti-lock brakes. If those operators follow the instructions provided to them by Harley-Davidson, and their motorcycles suffer wire breakage due to a defect known to Harley-Davidson since 2008, they could lock the wheels and experience a sudden loss of control, without warning, leading to a crash that could result in serious injury or death.

52.     Additionally, purchasers or lessees of the defective Class Motorcycle, such as Plaintiff and Class Members, suffer an economic loss. These purchasers believed they were

purchasing motorcycles with functional anti-lock brakes, for which they paid nearly $1000 over the price of a similar, non-ABS motorcycle, when in fact they were purchasing motorcycles with a braking system that is likely to lose anti-lock braking performance in an emergency. It is axiomatic that such persons would not elect to pay $1000 extra for a feature that would fail to work when needed. By continuing to offer motorcycles with a defective ABS wiring harness, Harley-Davidson caused economic harm to all purchasers and lessees of Class Motorcycles by offering motorcycles that were less valuable than Harley-Davidson promised, or that those persons expected they were receiving.

### Allegations specific to the Class Representative

53.     Plaintiff Ronald Garcia resides in Concord, California.

54.     In 2008, Mr. Garcia purchased a new 2008 Harley-Davidson Street Glide motorcycle, equipped with an anti-lock braking system.

55.     As of the filing of this Complaint, Mr. Garcia's motorcycle is equipped with a defective ABS wiring harness.

56.     Mr. Garcia's motorcycle has given him no signal or indication as to whether his ABS will function in an emergency stopping situation.

### Delayed Discovery, Concealment, and Equitable Tolling

57.     Mr. Garcia purchased his motorcycle in 2008. He diligently and regularly inspected the motorcycle, regularly serviced the motorcycle, performed preventative maintenance on the motorcycle, and flushed brake fluid as required by the recall.

58.     It was not until March 22, 2019 that Mr. Garcia realized that his motorcycle had a hidden and dangerous defect in the possible breakage of the wiring harness.  Mr. Garcia discovered the existence of this potentially dangerous defect on the Internet.  Before that time, there was no relevant information publicly available on the Internet, or elsewhere, that would alert any purchaser of the defective motorcycle as to the latent defect at issue in this case. Indeed, prior to 2019, it would not be possible for any putative class member to have discovered the defect through any diligent investigation given the nature of the defect and the lack of information available.

59.    Mr. Garcia filed this lawsuit less than two months of first suspecting the wire breakage defect in his motorcycle. He could not have discovered, through reasonable diligence, the defect earlier because Mr. Garcia did not know or suspect, nor have reason to know or suspect that his motorcycle had a defective wiring harness.

60.    Since this was a hidden defect which has not yet manifested itself in that it has not caused a malfunction of the ABS system, Mr. Garcia has no duty to reasonably investigate. The statute of limitations did not begin to run until Mr. Garcia had reason to know of the defect which came through his activity in March 2019. As the date of discovery was this year, none of the claims contained in this Complaint are barred by any statute of limitations.

61.    Even if Mr. Garcia has a duty to investigate, he could not have made the discovery of the defect earlier under any form of reasonable diligence. Mr. Garcia cannot be charged with the level of diligence required to perform his own personal testing of the wiring harness to prove that, after a sufficient number of turning movements, the subject wire running to the speed sensor would fracture and leave him without a working ABS system. This level of diligence would be patently unreasonable for a motorcycle consumer. Therefore, the statute of limitations did not begin to run until Mr. Garcia discovered the defect in March of 2019. Similarly, the statute of limitations did not begin to run for any putative class member until 2019, as the defect was not discoverable by any reasonable consumer acting diligently given its latent nature and as no relevant public information was available.

62.    With a recall issued by Harley-Davidson, with the involvement of NHTSA, regarding the ABS system in the Class Motorcycles, the owners of those motorcycles could not reasonably be expected to investigate whether there was yet another latent defect in the ABS system of the Class Motorcycles that was not disclosed as part of the recall.

63.    Prior to March 2019, Mr. Garcia, putative class members, and the public were ignorant of the existence of the defects because of Harley-Davidson's conduct in concealing the defect. As alleged herein, Harley-Davidson failed to disclose the existence of the defect, preventing Mr. Garcia or any consumer from discovering or having reason to believe that the ABS wiring breakage issue existed. Not only did Harley-Davidson hide the defect from the

public, it instructed dealers to continue to sell and repair motorcycles without alerting any customers that the defect existed despite the fact that it knew of the defect as early as 2009. As the manufacturer of the Class Motorcycles, Harley-Davidson was in a far better position than Mr. Garcia and the public to know of the defect. They were under a continuing duty to disclose to Mr. Garcia and the public the defects in the Class Motorcycles and the attendant safety ramifications. By never disclosing this issue, Harley-Davidson has intentionally failed in living up to that duty. Harley-Davidson's conduct in issuing the recall related to brake fluid further obscured public awareness regarding the wiring harness defect. In issuing a recall that covered the maintenance-base issue of fluid depositing, Harley-Davidson represented that complying with the recall would make the braking system on Class Motorcycles safe for use, including the ABS. This was not the case as the latent, still undisclosed defect in the wiring harness still made the Class Motorcycles unsafe.

64.     Because of this concealment as alleged herein, Mr. Garcia and putative class members could not have reasonably been on notice to investigate the defect, and the statute of limitations is subject to equitable tolling, Harley-Davidson is estopped from relying on the statutes of limitations, and none of the claims brought herein are time barred.

**First Claim for Relief**
**Unlawful, Unfair, and Fraudulent Business Practices**
(Cal. Bus. & Prof. Code § 17200, *et seq.*)
(On behalf of the California Subclass)

65.     All allegations and paragraphs in this complaint are incorporated by reference.

66.     Plaintiff, and the California Subclass Members, purchased the Class Motorcycle.

67.     Harley-Davidson engaged in unlawful, unfair, and/or fraudulent business practices or acts as defined by Cal. Bus. & Prof. Code § 17200.

68.     Through specific advertisements, Harley-Davidson represented that the ABS systems on the Class Motorcycles "offer[ed] consistent braking and stopping power under all operating conditions [and was] designed to help the rider maintain control during emergency stopping situations, especially those that happen in less-than-ideal conditions."

CLASS ACTION COMPLAINT                    CASE NO.:_____

69.     Harley-Davidson marketed and sold the Class Motorcycles, and otherwise caused the Class Motorcycles to be placed into and maintained in the stream of commerce for use by consumers in California without disclosing the hidden defect and serious safety hazards. While Harley-Davidson continues to conceal critical information regarding the defect and its associated dangers, consumers continue to use dangerous and patently unsafe motorcycles which are not safely useable for their intended purposes without recall and replacement of their anti-lock brake systems with an effective redesign. Any utility of this unfair conduct is greatly outweighed by the possibility of grievous harm to the users of the Class Motorcycle and the public sharing the roads with them.

70.     As early as 2008, Harley-Davidson had actual knowledge that the ABS on the Class Motorcycles was and is defective and patently unsafe with a high probability of injury or damage to Plaintiff and Subclass Members. Despite this knowledge, Harley-Davidson pursued a course of conduct that resulted in damage to Plaintiff and Subclass Members, or it was so reckless or wanting in care that its conduct constituted a conscious disregard or indifference to the life, safety, or rights of Plaintiff and Subclass Members. Again, the benefit of Harley-Davidson's conduct in regard to this ABS system issue, if there is any, is greatly outweighed by the harm to the public in operating these failure-prone motorcycles.

71.     Harley-Davidson was and remains obligated to disclose its knowledge regarding the hazards associated with the Class Motorcycles because of the public's reasonable expectations that their ABS would not fail to work under reasonable and customary operation by riders who did not know that the system may be non-functional. Indeed, Harley-Davidson knew that it had instructed its riders to brake differently when the riders were on a motorcycle with ABS, and knew that those braking instructions did not apply, and could lead to a loss of control, on a motorcycle without a functional ABS. Harley-Davidson should have disclosed to its consumers that the Class Motorcycles had an ABS wiring harness that could fail, potentially without warning, leaving the motorcycle with a non-functional ABS and subject to a dangerous loss of control and crash. This conduct is fraudulent as defined by Cal. Bus. & Prof. Code § 17220. Harley's sale of motorcycles with ABS systems it knew to be defective, and braking

instructions that make the possible situation of failure even more disastrous, are likely to mislead members of the public.

72.     Harley-Davidson's failure to disclose the material safety hazards associated with its ABS on the Class Motorcycles has and continues to mislead consumers because the failure to disclose this safety hazard was and remains material to all owners of Class Motorcycles. Harley-Davidson, by and through its dealers, sales people and agents, has and continues to inform potential purchasers of Class Motorcycles that they are safe, fit for the use for which they were intended, and merchantable. Plaintiff, Subclass Members, and reasonable consumers attach significant importance and influence to the safety hazard posed by the defective braking system in deciding to purchase, operate, and continuing to operate a Class Motorcycle. They have no reason to believe that the ABS system does not work as intended. These representations are fraudulent within the meaning of Cal. Bus. & Prof. Code § 17200 and are likely to mislead members of the public.

73.     Harley-Davidson has been aware of the defect in the Class Motorcycles since at least 2008, and has failed to act to recall, correct, or otherwise mitigate the danger associated with that defect.

74.     The sale or lease of the Class Motorcycles constitutes a violation of Cal. Bus. & Prof. Code § 17200 in that Harley-Davidson's acts are unlawful, unfair, and fraudulent acts or practices. In continuing withhold information about this serious and dangerous defect from owners or riders of Class Motorcycles, Harley-Davidson has also violated Cal. Bus. & Prof. Code § 17200.

75.     Harley-Davidson's conduct and omissions described herein were also unlawful in violation of Cal. Comm. Code § 2313, Cal. Comm. Code § 2314, Cal. Civil Code § 1971.1, Cal. Civil Code § 1972, and 15 U.S.C. § 2301. Its conduct and omissions were likely to mislead the public were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

76.     Plaintiff and California Subclass Members have been damaged and suffered a loss by Harley-Davidson's unlawful, unfair and fraudulent business practices because they paid

for the Class Motorcycles. Were it not for Harley-Davidson's unlawful, unfair, and fraudulent business practices, Plaintiff and California Subclass Members would not have purchased, paid to warrant, nor continued to use the Class Motorcycles at all or only after they were rendered safe and the brake system repaired or replaced. The Plaintiff and California Subclass Members sustained damages including, but not limited to, the difference in the market value of the Class Motorcycles in the condition in which they were delivered, the market value in the condition in which they should have been delivered, and from the loss of use of their motorcycles.

77.    The value of the Class Motorcycles with a defective braking system is substantially less than the value of the motorcycle would have had if the braking system was fully functional. Accordingly, Plaintiff, who paid for a motorcycle with fully functioning ABS brakes, paid a substantial premium over what he received, a motorcycle with defective ABS brakes and, as a result, lost money and property as a result of Harley-Davidson's unlawful, deceptive and unfair conduct. Plaintiff and the Subclass members also suffered actual damages in that the wiring harness, and thus the ABS, are substantially certain to fail before their expected useful life has run. There is no requirement that a class member suffer physical injury to bring a claim under Cal. Bus. & Prof. Code § 17200. It is Harley-Davidson's duty to rectify the problem at this stage before there is injury or death because of the defect it created and perpetuated.

78.    Plaintiff and California Subclass Members seek injunctive relief requiring Harley-Davidson to notify all members of the California Subclass regarding the defect and to recall and repair the motorcycles, as well as full restitution and any other relief to which Plaintiff and California Subclass Members may be entitled.

**<u>Second Claim for Relief</u>**
**Breach of Express Warranties**
(Cal. Comm. Code § 2313)
(On behalf of the California Subclass)

79.    Plaintiff, individually and for the Subclass Members, hereby incorporates each allegation as though fully set forth herein.

CLASS ACTION COMPLAINT                    CASE NO.:_____

80.    For each Class Motorcycle sold by Harley-Davidson, an express written warranty was issued that covered the motorcycle, including but not limited to the braking system, and which warranted the motorcycle to be free of defects in materials and workmanship at the time of delivery. This warranty became a material part of the basis of the bargain for the sale of each of the Class Motorcycles.

81.    This warranty was an express warranty under California law.

82.    Harley-Davidson breached its warranties by offering for sale and selling defective motorcycles that were by design and construction defective and unsafe, thereby subjecting the owners of the Class Motorcycles to damages and risks of loss and injury.

83.    Harley-Davidson also breached its warranties by offering for sale and selling defective motorcycles that required premature replacement of the wiring harness or a change in the design of the wiring harness to alleviate the defect.

84.    Harley-Davidson further breached the warranties by refusing to honor them by replacing, repairing, or changing the wiring harnesses free of charge and instead charging for the repairs replacements or changes.

85.    Harley-Davidson's breach of its express warranties proximately caused Plaintiff and Class Members to suffer damages in excess of $5,000,000.00. Plaintiff and Subclass Members suffered an ascertainable loss of money, property, and/or value of their Class Motorcycles. Also, as a result of the defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Motorcycles' wiring harnesses, and thus the ABS, are substantially certain to fail before their expected useful life has run.

86.    Plaintiff was not required to notify Harley-Davidson of the breach as he did not deal with them but rather a dealer. Alternatively, notification to Harley-Davidson would have been futile as Harley-Davidson would not have agreed to pay for the repair or other amelioration of the defect.

87.    Plaintiff and Class Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Harley-Davidson's wrongful acts and

practices, restitution, the repair of all Class Motorcycles, replacement of all Class Motorcycles that are not capable of being repaired, the refund of money paid to own or lease all Class Motorcycles, and any other relief to which Plaintiff and Class Members may be entitled.

**Third Claim for Relief**
**Breach of Implied Warranty**
(Cal. Comm. Code § 2314)
(On behalf of the California Subclass)

88.    Plaintiff, individually and for the Class Members, hereby incorporates each allegation as though fully set forth herein.

89.    To the extent necessary, this count is plead in the alternative to other counts.

90.    Harley-Davidson impliedly warranted that the Class Motorcycle, which it designed, manufactured, sold, or leased to Plaintiff and Class Members, was merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

91.    Because the Class Motorcycle is equipped with a defective braking system, the motorcycle purchased or used by Plaintiff and Class Members is unsafe, unfit for use when sold, threatens injury to its riders, and is not merchantable.

92.    Harley-Davidson breached the implied warranty of merchantability in the sale or lease of the Class Motorcycles to Plaintiff and Class Members in that the motorcycles were not fit for their ordinary purpose and not merchantable.

93.    As a direct and proximate result of Harley-Davidson's breach of the implied warranty of merchantability, Plaintiff and Class Members suffered damages in excess of $5,000,000.00.

94.    Plaintiff and Class Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Harley-Davidson's wrongful acts and practices, restitution, the repair of all Class Motorcycles, replacement of all Class Motorcycles

that are not capable of being repaired, the refund of money paid to own or lease all Class Motorcycles, and any other relief to which Plaintiff and Class Members may be entitled.

**Fourth Claim for Relief**
**Violation of Song-Beverly Act**
(Cal. Civil Code §§ 1792, 1791.1)
(On behalf of the California Subclass)

95.    Plaintiff, individually and for the Subclass Members, hereby incorporates each allegations as though fully set forth herein.

96.    To the extent necessary, this count is plead in the alternative to other counts.

97.    At all relevant times, Harley-Davidson was the manufacturer, distributor, and/or warrantors of the Class Motorcycles. Harley-Davidson knew or had reason to know of the specific use for which the Class Motorcycles were purchased or leased.

98.    Harley-Davidson provided Plaintiff and Subclass Members with an implied warranty the Class Motorcycles and their parts and components are merchantable and fit for the ordinary purposes for which they were sold. Because of the defective wiring harness in every Class Motorcycle, they are not fit for the ordinary purpose for which they are sold: to provide safe and reliable transportation, including proper and consistent braking capabilities.

99.    Harley-Davidson impliedly warranted that the Class Motorcycles were of merchantable quality and fit for such use. The implied warranty included, among other things: (1) a warranty that the Class Motorcycles and their ABS that were manufactured, supplied, and/or distributed by Harley-Davidson were safe and reliable for providing transportation; and (2) a warranty that the Class Motorcycles and their ABS would be fit for their intended use while the Class Motorcycles were being operated.

100.    Contrary to these implied warranties, the Class Motorcycles and their ABS at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Subclass Members with reliable, durable, and safe transportation, including braking functions. Namely, the Class Motorcycles included a defective wiring harness that

CLASS ACTION COMPLAINT                          CASE NO.:_____

would cause the ABS to fail and be unsafe, inconsistent, and unreliable in providing transportation.

101.    As a result of Harley-Davidson's breach of these implied warranties, owners and lessees of the Class Motorcycles suffered an ascertainable loss of money, property, and/or value of their Class Motorcycles. Additionally, because of the wiring harness defect, Plaintiff and the Subclass members suffered actual damages in that the Class Motorcycles' wiring harness and ABS are substantially certain to fail before their expected useful life has run.

102.    Harley Davidson's actions, as alleged herein, breach the implied warranty that the Class Motorcycles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1791.1 and 1792.

**Fifth Claim for Relief**
Wisconsin Deceptive Trade Practices Act
(Wisconsin Stat. §100.18, et. seq.)

103.    All allegations and paragraphs in this complaint are incorporated by reference into this claim.

104.    This claim is brought by Plaintiffs individually and on behalf of both classes.

105.    Harley is a "person, firm, corporation or association" as defined by Wisconsin Statutes § 100.18(1).

106.    Plaintiffs and members of the putative class are members of "the public" as defined by Wisconsin Statutes § 100.18(1).

107.    With the intent to sell, distribute, or increase consumption of merchandise, Harley made, published, circulated, and placed before the public—or caused (directly or indirectly) to be made, published, circulated, placed before the public—advertisements, announcements, statements, and representations which contained assertions, representations, or statements of fact which are untrue, deceptive, and misleading.

108.    Harley also engaged in such untrue, deceptive, and misleading conduct as part of a plan or scheme the purpose or effect of which was not to sell merchandise as advertised.

CLASS ACTION COMPLAINT                    CASE NO.:_____

109.   The untrue, deceptive, and misleading statements made by Harley to the public with the intent to induce an obligation—specifically the purchase or lease of a 2008-2010 Harley Davidson Touring model motorcycle—are set about above, including that the ABS systems on the Class Motorcycles "offer[ed] consistent braking and stopping power under all operating conditions [and was] designed to help the rider maintain control during emergency stopping situations, especially those that happen in less-than-ideal conditions."

110.   Harley made these representations consistently in marketing materials, advertisements, and in newspaper articles.

111.   These representations are not expressions of opinion, they are specific factual statements.

112.   As set out above, the representations and scheme Harley enacted through them emanated from Wisconsin. Harley controls all marketing, manufacturing, and selling of the Class Motorcycle from its corporate headquarters in Milwaukee, Wisconsin.   The representations at issue here were "made" in Wisconsin in that Harley "caused them to exist" from Wisconsin, and they were part of a nation-wide scheme whereby they were disseminated from Wisconsin across the country.   Each representation at issue here was made before the parties decided to purchase the respective Harley-Davidson Touring model motorcycles which are the source of pecuniary loss for Plaintiffs and putative class members.

113.   The representations are untrue, deceptive and misleading, as discussed above, because Harley acted knowingly and intentionally with the purpose of causing and inducing Plaintiffs and members of the putative classes to purchase motorcycles which Harley knew to be faulty, defective, and which would not operate as promised.

114.   The representations caused a pecuniary loss to Plaintiffs and members of the putative classes in that each incurred damages as a direct result thereof.   Through its conduct, Harley intended to—and in fact did—materially induce Plaintiffs and each member of the putative classes to purchase or lease a motorcycle which directly and proximately resulted in pecuniary losses, including not receiving the benefit of the bargain in purchasing the motorcycle, and incurring unreimbursed repair costs.

115.    Plaintiffs, on behalf themselves and the putative classes, seek to recover their damages, including diminution of value, cost of repair or replacement, refund of full purchase price, attorney's fees under Wisconsin Statutes § 100.18(11), costs, injunctive relief, and punitive damages.

**Sixth Claim for Relief**
**Violation of the Magnuson-Moss Warranty Act,**
(15 U.S.C. §§ 2301, et. seq.)
(On behalf of the Nationwide Class)

116.    Plaintiff, individually and for the Subclass Members, hereby incorporates each allegation as though fully set forth herein.

117.    Harley-Davidson issued an express written warranty on each Class Motorcycle, that covered the motorcycle and its component parts, including the ABS, and which warranted the motorcycle to be free of defects in materials and workmanship at the time of delivery.

118.    Harley-Davidson breached its express warranties by offering for sale and selling defective motorcycles that were by design and construction defective and unsafe, thereby subjecting the riders of the Class Motorcycles to damages and risks of loss and injury.

119.    Plaintiff and members of the Subclass are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

120.    Harley-Davidson is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

121.    The Class Motorcycles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

122.    Harley-Davidson's written and implied warranties relate to the future performance of its motorcycles because they promised that the braking systems of the Class Motorcycles would perform adequately for a specified period of time or mileage, whichever came first.

123.    Harley-Davidson has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiff and Subclass Members, when

Class Motorcycles fail to perform as represented due to an undisclosed braking defect. Harley-Davidson fails to fully cover or pay for necessary inspections, repairs and/or motorcycle replacements for Plaintiff and the Subclass Members.

124.    Plaintiff, members of the Subclass, and the public will suffer irreparable harm if Harley-Davidson is not ordered to offer rescission to the Subclass by repurchasing their motorcycles for their full cost, and recall and repair all Class Motorcycles that are equipped with the defective braking systems.

125.    Harley-Davidson is under a continuing duty to inform its customers of the nature and existence of potential defects in the motorcycles sold.

126.    Such irreparable harm includes but is not limited to likely injuries because of the defects in the Class Motorcycles.

127.    Plaintiff and Subclass Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Harley-Davidson's wrongful acts and practices, restitution, the repair of all Class Motorcycles, replacement of all Class Motorcycles that are not capable of being repaired, the refund of money paid to own or lease all Class Motorcycles, and any other relief to which Plaintiff and Subclass Members may be entitled.

**Seventh Claim for Relief**
**Unjust Enrichment**
(On Behalf of the Nationwide Class)

128.    Plaintiff, individually and for the Class Members, hereby incorporates each allegation as though fully set forth herein.

129.    To the extent necessary, this count is plead in the alternative to other counts.

130.    Plaintiff and the Class Members conferred substantial benefits on Harley-Davidson by purchasing the defective Class Motorcycles. Harley-Davidson knowingly and willingly accepted and enjoyed those benefits.

131. Harley-Davidson's retention of these benefits is unjust due to its misrepresentations and failure to disclose dangerous defects in the Class Motorcycles.

132. As a direct and proximate cause of Harley-Davidson's unjust enrichment, Plaintiff and the Class Members are entitled to an accounting, restitution, attorneys' fees, costs and interest.

**Eighth Count**
**Declaratory Judgement**
(28 U.S.C. § 220, *et. seq*. and Fed. R. Civ. P. 57)
(On behalf of the Nationwide Class)

133. Plaintiff, individually and for the class members, hereby incorporates each allegation as though fully set out herein.

134. Under 28 U.S.C. § 2201, this Court is impowered to "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

135. The purpose of declaratory relief is to prevent unavoidable loss and unnecessary accrual of damages.

136. This case presents an actual controversy between Plaintiff and Harley-Davidson as to whether the defect present in the Class Motorcycles represents an unreasonable public safety hazard.

137. Harley-Davidson knew of the defect in the Class Motorcycles' wiring harnesses, and its attendant safety hazards, since as early as 2009. Yet, Harley-Davidson still refuses to disclose the defect to consumers or attempt to do anything to remediate it.

138. Based on this conduct, Plaintiff seeks a declaration that the Class Motorcycles are defective as alleged herein. This defect is material and requires disclosure to all persons who own or lease them.

139. This requested declaratory relief will produce common answers that will settle the controversy regarding the defect and its attendant safety hazards. There is an economy in

CLASS ACTION COMPLAINT                    CASE NO.:_____

resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and each member of the putative classes, seeks full compensatory damages allowable by law, restitution, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Harley-Davidson's wrongful acts and practices, restitution, the repair of all Class Motorcycles, replacement of all Class Motorcycles that are not capable of being repaired, the refund of money paid to own or lease all Class Motorcycles, and any other relief to which Plaintiff and Class Members may be entitled.

## DEMAND FOR JURY TRIAL

The Plaintiff and the Class Members hereby demand trial by a struck jury of all issues triable by right.

Respectfully submitted,

*/s/ Nicholas W. Armstrong*
Nicholas W. Armstrong
Cal. Bar No. 270963
Jacob M. Tubbs
Garrett Owens
PRICE ARMSTRONG LLC
2226 1st Ave S Suite 105
Birmingham, AL 35233
Phone: 205.706.7517
Fax: 205.209.9588
nick@pricearmstrong.com

Mark N. Todzo
Cal. Bar No. 168389
LEXINGTON LAW GROUP LLP
503 Divisadero St
San Francisco, CA 94117
Phone: 415.913.7800
Fax: 415.759.4112
mtodzo@lexlawgroup.com

CLASS ACTION COMPLAINT                    CASE NO.:_____