UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD GARCIA,<br><br>    Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-02054-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 41 |

## I.  INTRODUCTION

In this putative class action, Plaintiff Ronald Garcia alleges that several models of motorcycles sold by Defendant Harley-Davidson Motor Company, Inc. ("Harley-Davidson") included a defective antilock braking system ("ABS") prone to premature failure during normal operation of the motorcycle.  Harley-Davidson moves to dismiss Garcia's first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court hearing on November 15, 2019.  For the reasons discussed below, the motion is GRANTED in part and DENIED in part. Garcia may file a second amended complaint no later than December 6, 2019.[1]

## II.  ALLEGATIONS OF THE COMPLAINT

Plaintiff Ronald Garcia purchased a new 2008 Harley-Davidson Street Glide motorcycle equipped with ABS from a dealer in Oakland, California in 2008, and paid a premium as compared to motorcycles without ABS.  1st Am. Compl. ("FAC," dkt. 19) ¶¶ 4, 26, 58, 77.[2]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposed pursuant to 28 U.S.C. § 636(c).
[2] Because the allegations of the complaint are taken as true on a motion under Rule 12(b)(6), this section summarizes the allegations of Garcia's complaint as if true.  Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Harley-Davidson represented in promotional materials that the ABS feature performed effectively and increased emergency braking performance. *Id.* ¶¶ 27–31. Unbeknownst to Garcia, Harley-Davidson was aware at that time of internal tests showing that normal operation of the motorcycle—specifically, turning the front wheel back and forth—would cause a wire necessary to the ABS system to break well before the expected useful life of the product. *See id.* ¶¶ 3, 35–37. If the wire broke, the ABS would not function, and while the motorcycles were equipped with a warning light to indicate issues with the ABS, Garcia alleges that the light would not work to reveal this issue. *Id.* ¶¶ 38–39.

Although the motorcycle's basic "foundation" brakes would continue to function if the ABS failed, Garcia alleges that the undetectable failure of the ABS would nevertheless pose a danger to riders, because Harley-Davidson recommended different methods of using the brakes for motorcycles with or without ABS. *Id.* ¶¶ 32–34, 38, 40. On motorcycles without ABS, riders were instructed to manually release and reapply the brakes to prevent the wheels from locking and the motorcycle from skidding out, which Harley-Davidson stated "could result in death or serious injury." *Id.* ¶ 33. For motorcycles equipped with ABS, Harley-Davidson instructed riders "*not* [to] modulate or 'pump' the brake controls," but instead to "apply consistent pressure" in order to allow the ABS to automatically control the rate of braking. *Id.* ¶ 32 (emphasis added). Garcia alleges that a rider who followed those instructions unaware that the ABS had failed could lose control and be killed or injured. *Id.* ¶ 40.

Although Harley-Davidson was aware of this issue with the ABS wiring harness in 2008 and began working to change the design, it did not inform owners of the affected motorcycles, and continued to use the same wiring harness in several motorcycle models for the 2008, 2009, and 2010 model years, only replacing the wiring harness for the 2011 model years. *Id.* ¶¶ 42–46.

In 2016, the National Highway Traffic Safety Administration ("NHTSA") investigated a separate ABS issue affecting certain Harley-Davidson motorcycles, including the motorcycles at issue in this case. *Id.* ¶ 49. That issue related to hydraulic fluid, not wiring, and could cause the brake lever to feel hard and become difficult or impossible to operate. *Id.* ¶¶ 49–50. Harley-Davidson conducted a recall of the affected motorcycles, but the investigation did not relate to the

2

purported wiring harness defect at issue in this case, and Harley-Davidson did not make the public aware of the wiring harness issue. *Id.* ¶¶ 52–53. Garcia alleges that ABS failures on the Harley-Davidson motorcycles have led to crashes and serious injury, and that Harley-Davidson has received complaints about ABS failures, but his complaint does not make clear whether those failures were caused by the hydraulic fluid issue addressed in the NHTSA investigation or by the wiring issue that is the subject of this case. *Id.* ¶¶ 41, 47.[3]

Garcia learned of the defect in March of 2019 when information about it was released for the first time on the internet. *Id.* ¶¶ 62, 64, 67. Garcia's motorcycle has not overtly indicated that the ABS system has failed, but he has observed "braking characteristics that were inconsistent with other ABS-equipped motorcycles he has ridden." *Id.* ¶ 60. He is now "leery of [his] motorcycle and unable to rely on it in an emergency braking situation." *Id.* There is no indication in the complaint that Garcia has had his motorcycle inspected by a mechanic to determine whether the ABS is functioning or that he has sought to have it repaired.

Garcia asserts the following claims, for which he seeks to represent a class of California purchasers: (1) unlawful, unfair, and fraudulent business practices, in violation of California's Unfair Competition Law (the "UCL"), FAC ¶¶ 69–87; (2) breach of express warranty under section 2313 of the California Commercial Code, FAC ¶¶ 88–96; (3) breach of implied warranty under section 2314 of the California Commercial Code, FAC ¶¶ 97–103; and (4) breach of implied warranty in violation of California's Song-Beverly Act, FAC ¶¶ 104–11. For the following remaining claims, Garcia seeks to represent a nationwide class: (5) violation of the federal Magnuson-Moss Warranty Act, FAC ¶¶ 112–123; (6) unjust enrichment, *id.* ¶¶ 124–129; and (7) a claim for declaratory judgment, *id.* ¶¶ 130–38.

**III. ANALYSIS**

**A. Legal Standard**

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss

---

[3] Garcia's attorney asserted at the hearing that at least one fatal crash has been caused by the wiring defect at issue in this case, but no such allegation appears in the complaint.

3

under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. UCL Claim

#### 1. Injury in Fact

Harley-Davidson contends that Garcia's UCL claim must be dismissed because Garcia has not alleged sufficient injury, relying primarily on the California appellate decision *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006), and similar authority. *See* Mot. (dkt. 41) at 7–11. The court in *Daugherty* held that "failure to disclose a defect that might, or

4

might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Daugherty*, 144 Cal. App. 4th at 839 (2006). Subsequent cases have held "that something more is required than simply alleging an overpayment for a 'defective' product." *E.g.*, *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1165 n.11 (C.D. Cal. 2011). As Harley-Davidson acknowledges, however, a "safety defect" can constitute the "something more" needed to establish cognizable injury. Mot. at 8 n.1; *see In re Toyota*, 790 F. Supp. 2d at 1165. Moreover, the *In re Toyota* decision on which Harley-Davidson relies went on to explain that plaintiffs can clear this hurdle by "not simply alleg[ing] that their . . . vehicles are 'defective,' but rather offer[ing] detailed, non-conclusory factual allegations of the product defect." 790 F. Supp. 2d at 1166. By alleging specifically that his motorcycle includes an ABS wiring harness prone to failure as a result of turning the front wheel during normal operation, causing the ABS system to become disabled with no obvious sign to the rider and potentially leading to the wheels locking when the rider applies the brakes, FAC ¶¶ 37–40, Garcia has alleged a non-conclusory defect and safety issue. Such allegations, coupled with Garcia's allegation that he would not have purchased the motorcycle at the same price had he known of the defect, *id.* ¶ 79, are sufficient to allege injury under the UCL.[4]

Harley-Davidson argues that Garcia's allegations of safety issues are speculative. Unlike the cases on which Harley-Davidson relies, however, the defect that Garcia alleges here goes directly to a feature designed to improve the safety of the motorcycles at issue. *Cf., e.g.*, *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1028–29 (9th Cir. 2017) (holding that plaintiffs did not

---

[4] Garcia relies on the Ninth Circuit's decision in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012), for the rule that overpayment for a product based on deceptive claims or omissions establishes injury in fact. *See* Opp'n at 10–11. That portion of *Mazza*—a case Harley-Davidson fails to address in its reply brief—concerns standing under Article III of the Constitution, not the UCL's requirement that a plaintiff "has suffered injury in fact and has lost money or property as a result of a violation." *See* Cal. Bus. & Prof. Code § 17535. The Court need not address whether the test for "injury in fact" is the same under that statute as under Article III.

5

sufficiently allege safety hazards arising from a defect in an outboard motor exhaust system); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 990 (N.D. Cal. 2010) (holding that a defect preventing a vehicle from starting did not establish a non-speculative safety hazard), *aff'd*, 462 F. App'x 660 (9th Cir. 2011); *Missaghi v. Apple Inc.*, No. CV 13-02003 GAF (AJWx), 2013 WL 12114470, at *8 (C.D. Cal. Aug. 28, 2013) (holding that an alleged defect affecting the ability to operate the power button on an iPhone did not establish a safety hazard). Garcia alleges that the defect at issue disables the ABS system—which is intended to prevent a motorcycle from skidding when braking hard—increasing the chances of a motorcycle skidding and crashing when the rider attempts to stop quickly. Garcia alleges that the danger is compounded by the different braking techniques prescribed for ABS and non-ABS motorcycles, with Harley-Davidson advising riders to pump the brakes on a non-ABS motorcycle but to apply constant pressure on an ABS-equipped motorcycle. FAC ¶¶ 32–34, 40. According to Garcia, Harley-Davidson specifically advised that applying the constant pressure appropriate for an ABS-equipped motorcycle to a motorcycle without ABS could cause the wheels to lock, and that a "locked wheel will skid and can cause a loss vehicle control, which could result in death or serious injury." *Id.* ¶¶ 33–34.

Harley-Davidson contends that the actual danger of such an accident is remote because a warning light will advise riders of ABS failures, a rider can tell from the feel of the brakes whether the ABS system is working, and there is no evidence that motorcycle ABS systems actually prevent accidents. Mot. at 9–11. Garcia alleges that the ABS warning light does not work to alert riders to this issue; at this stage of the case, the Court takes that allegation as true. FAC ¶ 39. As for the feel of the brakes, it is not clear from the complaint that a rider should be able to tell whether the ABS system is functioning properly before a safety hazard manifests. While Garcia alleges that Harley-Davidson advised riders that they would feel a pulsing sensation in the brakes when the system was working, it is reasonable to infer at the pleading stage that the pulsing sensation results from the ABS system automatically releasing and reapplying the brakes to prevent the motorcycle from skidding, which in a well-functioning system would not occur until just before the motorcycle begins to skid. It is not clear how a rider would know at any point before the wheels locked that the *absence* of that sensation indicated a defect requiring the rider to

6

manually pump the brakes. And with respect to the efficacy of ABS to prevent accidents, the National Highway Traffic Safety Administration ("NHTSA") rules and studies on which Harley-Davidson relies may be evidence supporting its position, but Harley-Davidson cites no authority allowing this Court to take the NHTSA's conclusions as unrebuttable fact sufficient to reject Garcia's allegations at the pleading stage. Garcia has alleged a plausible means by which the purported ABS defect could endanger riders in normal operation of their motorcycles. At this stage of the case, that is enough. The motion to dismiss is DENIED as to this argument.

### 2. Affirmative Misrepresentations

Harley-Davidson argues that Garcia's UCL claim cannot proceed based on affirmative misrepresentations because Garcia has not alleged with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure, that he relied on any specific representation by Harley-Davidson. Mot. at 11–13. Rule 9(b) sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that in order to meet this standard, a "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also McMaster v. United States*, 731 F.3d 881, 897 (9th Cir. 2013). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (ellipsis in original).

Garcia alleges that beginning in 2007, Harley-Davidson made a number of representations about the effectiveness of its ABS product in press releases, product catalogs, promotional videos, and perhaps "other such representations." FAC ¶¶ 27–31 (quoting a number of promotional materials released by Harley-Davidson). He also alleges that he "relied upon these representations when purchasing his . . . motorcycle in 2008," *id.* ¶ 77, but does not identify the particular representations on which he relied. While Garcia's complaint could perhaps be construed as

7

alleging that Garcia saw and relied on *all* of the promotional materials quoted earlier in the complaint, his opposition brief appears to disclaim such a broad interpretation, conceding that he "does not allege which of these representations he relied upon or the exact date of viewing." Opp'n (dkt. 46) at 17. The Court declines to read the complaint more broadly than Garcia intended.

Garcia argues that reliance falls within the "state of mind" exception to Rule 9(b)'s heightened pleading requirement. *Id.* While the Court agrees that Garcia need not allege with particularity *why* he relied on a particular representation, his failure to identify *which* representations he relied on, or even which representations he viewed before purchasing his motorcycle,[5] warrants dismissal even if the Court applies the normal pleading standard of Rule 8 and *Iqbal*. Without such allegations, Harley-Davidson lacks notice of the particular representations that give rise to Garcia's claims, and thus lacks the ability to raise potential arguments specific to those representations—for example, that they were truthful, were mere puffery, or otherwise cannot support a claim. To the extent that Garcia's UCL claim is based on affirmative misrepresentations, it is DISMISSED with leave to amend.

### 3. Omissions

"To state a claim for failing to disclose a defect, a party must allege '(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and that the manufacturer knew of the defect at the time a sale was made.'" *Williams*, 851 F.3d at 1025 (citation omitted) (considering claims under California's UCL and similar laws of other states). California law may also permit claims based on failure to disclose defects central to the functioning of a product even when not related to safety, but the law is unsettled as to such claims. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862–64 (9th Cir. 2018) (comparing the rule of *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), and *Daugherty*, 144 Cal. App. 4th 824, with the California appellate decisions *Rutledge v.*

---

[5] Although not relevant to the outcome of the present motion, the Court notes that which representations Garcia *saw* before he purchased his motorcycle is not an issue of state of mind, and thus likely must be pled with particularity under Rule 9(b).

8

*Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015), and *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011)).

Harley-Davidson moves to dismiss Garcia's UCL claim to the extent that it is based on omissions on the basis that Garcia has not alleged facts giving rise to a duty to disclose. Harley-Davidson concedes that California recognizes a duty to disclose where a defect creates an unreasonable safety risk. *See* Mot. at 13 (citing *Williams*, 851 F.3d at 1025). As discussed above, Garcia's complaint plausibly alleges a safety risk as a result of the purported defect in Harley-Davidson's ABS product. Harley-Davidson's motion to dismiss for failure to allege a duty to disclose is DENIED. The Court does not reach the question of whether there is any basis for a duty to disclose in this case other than a safety issue.

### 4. Unlawful Conduct

The parties agree that to the extent Garcia's UCL claim is based on "unlawful" conduct, it rises or falls with his claims for breach of express or implied warranty. *See* Opp'n at 18. Because the Court declines to dismiss Garcia's implied warranty claim under the Song-Beverly Act for the reasons discussed below, Harley-Davidson's motion is DENIED as to this claim.

### 5. Administrative Primary Jurisdiction

Harley-Davidson asks the Court to dismiss Garcia's UCL claim for classwide injunctive relief based on the doctrine of primary jurisdiction, arguing that the NHTSA is better suited than the judiciary to direct any repairs that might be needed of the purported defect at issue. Mot. at 14–15. The Ninth Circuit has described that doctrine as follows:

> Primary jurisdiction is a prudential doctrine that permits courts to determine "that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). In evaluating primary jurisdiction, we consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek* [*Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002)].
>
> Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is

9

> reserved for a "limited set of circumstances" that "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark*, 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)) (internal quotation marks omitted). . . .
>
> Nonetheless, courts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims. *Reid v. Johnson & Johnson*, 780 F.3d 952, 967–68 (9th Cir. 2015); *United States v. Philip Morris USA Inc.*, 686 F.3d 832, 838 (D.C. Cir. 2012) ("The primary jurisdiction doctrine is rooted in part in judicial efficiency."). Under our precedent, "efficiency" is the "deciding factor" in whether to invoke primary jurisdiction. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007).
>
> Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation. Similarly, primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make. *See Amalgamated Meat Cutters & Butcher Workmen of N. Am.*, 381 U.S. at 686, ("[Primary jurisdiction] does not require resort to an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency.") (internal quotation marks and citation omitted).

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760–61 (9th Cir. 2015) (final alteration in original).

As far as this Court is aware, while automobile defect cases are relatively common, no court within the Ninth Circuit has dismissed a request for injunctive relief in such a case under the primary jurisdiction doctrine. Many courts have declined to do so, even in some cases where—unlike here—the NHTSA has undertaken at least some steps to investigate the purported defect at issue. *E.g.*, *Glenn v. Hyundai Motor Am.*, No. SA CV 15-2052 DOC (KESx), 2016 WL 3621280, at \*16 (C.D. Cal. June 24, 2016); *Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2016 WL 693283, at \*11–13 (N.D. Cal. Feb. 22, 2016); *Ford v. Ford Motor Co.*, No. CV 13-8335 PSG (SSx), 2014 WL 12570925, at \*5 (C.D. Cal. Jan. 17, 2014); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*, 890 F. Supp. 2d 1210, 1224 (C.D. Cal. 2011); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1199 (C.D. Cal. 2010); *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d

10

1208, 1218–198 (N.D. Cal. 2002).[6] Harley-Davidson does not address or distinguish any of those cases. Moreover, the out-of-circuit district court decision on which Harley-Davidson's motion relies for applying the primary jurisdiction doctrine in motor vehicle defect case limited its application of that doctrine to vehicle models where the NHTSA had issued a recall, and declined to apply the doctrine to other models at issue. *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 628–29 (M.D.N.C. 2006).

There is no indication that the NHTSA has undertaken any investigation of the defect at issue here, *cf id.*, and Garcia's claims do not arise under the Motor Vehicle Safety Act, which establishes the administrative scheme for NHTSA recalls, *see In re Toyota Motor Corp. Hybrid Brake Mktg.*, 890 F. Supp. 2d at 1224. The case "is not based on NHTSA regulations, safety standards, or agency-specific statutes." *See Ford v. Ford Motor Co.*, 2014 WL 12570925, at *5. The relatively straightforward issue of wires purportedly prone to breakage is not outside of this Court's competence, and the Court could administer uniform relief if the nationwide class that Garcia seeks to represent is ultimately certified. In the absence of any authority from within this circuit dismissing a similar claim for injunctive relief based on the NHTSA's primary jurisdiction, this Court declines to do so.

### C. Express Warranty Claim

Harley-Davidson moves to dismiss Garcia's express warranty claim on the basis that the express terms of the warranty do not provide any remedy for failure of components several years after purchase, and instead provide only for repair or replacement of "any parts found under normal use to be defective in factory materials or workmanship" within two years of the purchase of the motorcycle. Mot. at 16 (quoting Thomas Decl. (dkt. 41-2) Ex. A). The purported warranty document offered by Harley-Davidson requires the owner of the motorcycle to return it to a

---

[6] The only case cited in the portion of Harley-Davidson's reply brief addressing this doctrine is in accord, holding that the primary jurisdiction doctrine was not appropriate because "none of Plaintiffs' claims arise under the Safety Act or litigate any regulation or standard that the NHTSA has issued; rather, their claims arise under ordinary state law contract and tort principles," and the defendant "[a]utomakers have not shown that any special agency competence is required to adjudicate these claims." *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1279 (C.D. Cal. 2016); *see* Reply at 14–15 (dkt. 48) (citing only *Lassen*).

11

dealership during the warranty period in order to obtain service. Thomas Decl. Ex. A. Although Garcia disputed whether the Court could properly take notice of that document at this stage of the case, his counsel conceded at the hearing that the document is likely authentic and applicable to Garcia's claims, and agreed to dismiss the claim for breach of express warranty without prejudice to seeking leave to amend if evidence arises to support such a claim at a later stage of the case. Based on that stipulation, Harley-Davidson's motion is GRANTED as to this claim, which is DISMISSED without prejudice.

### D. Implied Warranty Claims

Garcia asserts two claims for breach of implied warranty, under section 2314 of the California Commercial Code (an implementation of the Uniform Commercial Code, or "UCC") and under sections 1791.1 and 1792 of the California Civil Code (the "Song-Beverly Act"). Harley-Davidson moves to dismiss both claims. Section 2314 provides that "a warranty that the goods shall be merchantable"—which includes that the goods "[a]re fit for the ordinary purposes for which such goods are used"—"is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1), (2)(c). The Song-Beverly Act provides that, "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. As with the UCC, the implied warranty of merchantability under the Song-Beverly Act includes that the goods "[a]re fit for the ordinary purposes for which such goods are used." *Id.* § 1791.1(a)(2).

#### 1. Privity

Harley-Davidson contends that Garcia's UCC implied warranty claim must be dismissed for lack of privity, because Garcia purchased his motorcycle from an independent dealer rather than directly from Harley-Davidson.[7] There is no dispute that Garcia did not purchase the

---

[7] The Song-Beverly Act does not require privity, and Harley-Davidson does not argue that lack of privity warrants dismissal of Garcia's claim under that statute. *See* Cal. Civ. Code § 1792 ("Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 982 (N.D. Cal. 2014).

motorcycle directly from Harley-Davidson. *See, e.g.*, FAC ¶ 95 (alleging that Garcia "was not required to notify Harley-Davidson of the breach as he did not deal with them [sic] but rather a dealer.").

"The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)). "Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.* (citing *Osborne*, 198 Cal. App. 3d at 656 n.6).

Garcia contends that he may nevertheless bring an implied warranty claim against Harley-Davidson because he was an intended third-party beneficiary of Harley-Davidson's implied warranty to the dealer. Opp'n at 25–26.[8] Although there is some disagreement among district courts as to whether such an exception to the requirement of privity is viable, this Court has previously considered the issue and held that such a broad exception is inconsistent with Ninth Circuit precedent interpreting California law. *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 785–88 (N.D. Cal. 2017); *see Clemens*, 534 F.3d at 1024 ("California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it."). Garcia cites no case decided after this Court's consideration of the issue in *Seagate*, nor any other authority that would alter that conclusion. Garcia's third claim, for breach of implied warranty under section 2314 of the Commercial Code, is DISMISSED with prejudice.

---

[8] Garcia's opposition exceeds the twenty-five page limit imposed by Civil Local Rule 7-3(a). The violation is not as severe as might be suggested by the number "34" on the final page of the brief, because the text of Garcia's argument is contained only on the pages numbered from 8 through 33, but that span nevertheless constitutes twenty-six full pages of argument. Although the Court excuses that violation in this instance, Plaintiff's counsel is admonished to comply with all applicable page limits going forward. Counsel is also instructed to follow the standard convention of using a separate numbering scheme for cover pages, tables of contents, and the like, so that the number of pages used for argument is readily apparent from the page numbers.

13

1       The Court does not reach Harley-Davidson's remaining arguments for dismissal of the
2   UCC implied warranty claim, including the statute of limitations and injury arguments discussed
3   below in the context of Garcia's Song-Beverly implied warranty claim, as well as an argument
4   specific to the UCC that the implied warranty conflicts with the terms of the express warranty.
5   *See* Mot. at 19–20.

### 2.  Statute of Limitations

Harley-Davidson moves to dismiss Garcia's Song-Beverly Act claim for failure to bring the claim within the statute of limitations. A claim under the Song-Beverly Act "must be commenced within four years after the cause of action has accrued." Cal. Com. Code § 2725(1); *see Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1305–06 (2009) (holding that section 2725 sets the statute of limitations for a Song-Beverly claim). Under section 2725 of the Commercial Code, a claim for breach of warranty "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and a "breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Cal. Com. Code § 2725(2).

Garcia does not dispute that he failed to file his claim within four years after the breach of warranty, but argues that the doctrine of fraudulent concealment tolls the statute of limitations. Opp'n at 22–25; *see also* Cal. Com. Code § 2725(4) ("This section does not alter the law on tolling of the statute of limitations . . . ."). Harley-Davidson contends that Garcia has not established fraudulent concealment because he has not alleged affirmative acts of concealment rather than mere nondisclosure. Mot. at 18–19. Garcia does not address that requirement in his opposition brief, instead arguing only that district courts have found fraudulent concealment to have been sufficiently alleged in similar product defect cases. *See* Opp'n at 23–25.

California courts have held that "*[a]bsent a fiduciary relationship*, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required." *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 874 (2004) (citing *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 896 (1974)) (emphasis added). But *Johnson*, the case on which *Long* relies for that

14

statement of law, went on to state not only that "no such relationship existed," but also "nor were defendants *under a duty* to inform plaintiffs" of the purported misconduct. *Johnson*, 43 Cal. App. 3d at 896 (emphasis added). Other California appellate decisions define fraudulent concealment— albeit in the context of a claim for relief, rather than a tolling doctrine—as requiring only "a duty to disclose the fact to the plaintiff," rather than a duty necessarily arising from a *fiduciary* relationship. *E.g.*, *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (quoting *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014)). This Court has previously considered the same issue under federal law antitrust law, rather than California law, and held that fraudulent concealment can arise from an omission in the face of any duty to disclose, not only a fiduciary duty. *See Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS, 2019 WL 4492802, at *30 (N.D. Cal. Sept. 18, 2019) (citing, *e.g.*, *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)). In light of the consensus among California courts that any duty of disclosure can support a *claim* for fraudulent concealment, as well as the *Johnson* decision's consideration of whether there was any such duty in the context of tolling, the Court concludes that the California Supreme Court, if faced with the issue, would likely hold omission in the face of a duty to disclose sufficient to support tolling based on fraudulent concealment, even where the duty does not arise from a fiduciary relationship. As discussed above, Garcia has plausibly alleged a safety issue giving rise to a duty to disclose.[9]

Harley-Davidson has not argued that Garcia's complaint fails to meet any element of the test for tolling based on fraudulent concealment other than affirmative acts. Because that requirement is excused as a result of Harley-Davidson's duty to disclose defects causing safety

---

[9] After briefing concluded, each party filed a statement of recent decision attaching decisions of other courts considering similar claims against Harley-Davidson by other plaintiffs. In *Nesbitt v. Harley-Davidson Motor Co., Inc.*, No. SUCV2019000603 (Ga. Sup. Ct. Oct. 14, 2019), a Georgia state court held that whether Harley-Davidson engaged in affirmative conduct necessary to support fraudulent concealment was an issue of fact inappropriate for resolution on the pleadings. *See* Pl.'s Stmt. of Recent Decision (dkt. 50). In *Fisher v. Harley-Davidson Motor Co., Inc.*, No. 2:19-CV-14154-ROSENBERG/MAYNARD (S.D. Fla. Oct. 18, 2019), the Southern District of Florida held that the plaintiff had not alleged affirmative acts of concealment as required under Florida law and dismissed with leave to amend. *See* Def.'s Stmt. of Recent Decision (dkt. 55). Neither case addresses the requirements of California law.

risks, the motion is DENIED with respect to this argument.[10]

### 3. Manifestation of Injury

Harley-Davidson argues that Garcia cannot proceed on his Song-Beverly implied warranty claim because he has not alleged manifestation of injury. Harley-Davidson relies on the Ninth Circuit's decision in *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009), and a California appellate court's decision in *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1299 (1995). Although Garcia alleges vaguely that his motorcycle has "exhibited braking characteristics that were inconsistent with other ABS-equipped motorcycles he has ridden" and that he "believed that his ABS may not be functioning," FAC ¶ 60, he does not argue that he has an alleged a manifest failure for the purpose of his implied warranty claim, but instead relies on the theory that a latent defect can constitute sufficient injury where a product is substantially certain to fail during its useful life, *see* Opp'n at 27–28.

In *Birdsong*, a case alleging that iPods and the stock headphones packaged with them were capable of playing music at dangerously loud volume, the Ninth Circuit held that the plaintiffs' allegations "suggest[ed] only that users have the option of using an iPod in a risky manner, not that the product lacks any minimum level of quality." *Birdsong*, 590 F.3d at 958. In contrast, Garcia alleges here that an optional safety feature he selected for his motorcycle is prone to failure without warning. Such a claim falls more squarely within the framework of a product unfit for its intended use.

*American Suzuki* considered a motion for class certification, not a challenge at the pleading stage, and held that the trial court erred in certifying a class for implied warranty claims based on rollover risk for Suzuki vehicles where "the evidence presented demonstrated that only a small percentage of the [cars] sold during the class period have been involved in rollover accidents," and

---

[10] Certain allegations of Garcia's complaint could perhaps be read as suggesting that Harley-Davidson in fact took affirmative acts to conceal the defect. *See, e.g.*, FAC ¶ 67 ("Not only did Harley-Davidson hide the defect from the public, it instructed dealers to continue to sell and repair motorcycles without alerting any customers that the defect existed even though it knew of the defect as early as 2009 [sic; other portions of the complaint allege knowledge in 2008]."). Garcia's opposition brief, however, does not argue that Harley-Davidson engaged in affirmative acts of concealment, and the Court declines to consider that issue sua sponte.

16

"the vast majority of the [cars] sold to the putative class 'did what they were supposed to do for as long as they were supposed to do it.'" *Am. Suzuki*, 37 Cal. App. 4th at 1298. In other words, the Court did not hold that the individual plaintiffs could not bring their claims because their cars had not actually rolled over, but rather that no breach of implied warranty of merchantability occurred where the risk of injury was small. In contrast, another California appellate court has recognized that if plaintiffs can "prove their [products] contain an inherent defect which is substantially certain to result in malfunction during the useful life of the product they have established a breach of . . . express and implied warranties." *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 923 (2001).

Garcia has alleged that internal Harley-Davidson tests "revealed that the normal motion of turning the front wheel back and forth *would lead to breakage* in the wires [necessary for the ABS to function properly] in an abnormally short time—far shorter than the expected lifespan of the motorcycle's components." FAC ¶ 37 (emphasis added). Garcia further alleges that "the Class Motorcycles' wiring harness and ABS are substantially certain to fail before their expected useful life has run." *Id.* ¶ 110. Harley-Davidson asks the Court to disregard the latter assertion as conclusory, Reply at 11, but no heightened pleading standard applies to Garcia's implied warranty claim, and the factual allegation that Harley-Davidson's own tests showed that such failure would occur is sufficient to render the conclusion plausible. On the present motion to dismiss, there is no evidence before the Court as to the actual failure rate of the ABS wiring. Whether the wiring was in fact substantially certain to fail is an issue of fact to be addressed at a later stage of the case. Harley-Davidson's motion to dismiss Garcia's Song-Beverly claim is DENIED.

### E. Magnuson-Moss Claim

Garcia asserts a claim under the federal Magnuson-Moss Warranty Act, which the parties agree "stand[s] or falls with his express and implied warranty claims under state law." *See Clemens*, 534 F.3d at 1022; Mot. at 20; Opp'n at 28. Because Garcia's Song-Beverly implied warranty claim survives, Harley-Davidson's motion is DENIED as to his Magnuson-Moss claim.

### F. Unjust Enrichment Claim

Harley-Davidson moves to dismiss Garcia's claim for unjust enrichment because it is

17

inconsistent with his allegation of an express warranty. Mot. at 21. Garcia argues that he may assert the two theories in the alternative. Opp'n at 28–29.

> [U]njust enrichment is "not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). As such, a claim for unjust enrichment is properly pled as a claim for a contract implied-in-law. It "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). California, however, recognizes an exception to the rule that unjust enrichment does not lie when an enforceable contract exists: "Restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride*, 123 Cal. App. 4th at 388.

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 956 (N.D. Cal. 2010); *see also Astiana*, 783 F.3d at 762 ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

Although the parties appear to agree that an express warranty governed the sale of the motorcycle, and Garcia has not alleged facts supporting a conclusion that the express agreement was unenforceable or ineffective, the Ninth Circuit has counseled against dismissing quasi-contract claims under similar circumstances. *Astiana*, 783 F.3d at 762–63. Harley-Davidson's motion to dismiss this claim is DENIED, although dismissal of the claim may be warranted if, at a later stage of the case on a full factual record, it is clear that the parties' relationship was governed by an express contract. *See MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15-cv-02220-JCS, 2017 WL 1848470, at *22 (N.D. Cal. May 8, 2017).

### G. Declaratory Judgment Claim

Harley-Davidson moves to dismiss Garcia's declaratory judgment claim on the basis that it is duplicative of his claims for damages and injunctive relief. Mot. at 21–22. Some district courts have dismissed declaratory judgment claims under similar circumstances. *E.g.*, *Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.*, No. CV 14-07326-GW (PLAx), 2014 WL 12607694, at *7 (C.D. Cal. Nov. 3, 2014) (dismissing a declaratory judgment claim that "duplicates [the plaintiff's] more germane causes of action"). In this Court's view, however, the reasoning of *Astiana* in reversing

18

1  dismissal of a potentially duplicative quasi-contract claim, as discussed above, is equally
2  applicable here. *See Astiana*, 783 F.3d at 762 ("To the extent the district court concluded that the
3  cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other
4  claims, this is not grounds for dismissal." (citing Fed. R. Civ. P. 8(d)(2)). The Court declines to
5  dismiss this claim.

### H. Class Action Issues

Harley-Davidson raises two arguments specific to the class that Garcia seeks to represent, rather than his individual claims: that Garcia lacks Article III standing to represent a nationwide class, and that the Court lacks personal jurisdiction over Harley-Davidson with respect to claims of class members outside of California. Unless and until a class is certified, however, the only plaintiff in this case is Garcia himself, and Harley-Davidson does not dispute that Garcia has standing to bring claims in his individual capacity, or that Harley-Davidson is subject to the Court's personal jurisdiction with respect to those claims.

In the Ninth Circuit cases on which Harley-Davidson relies for the rule that courts should address standing and jurisdiction before class certification, the standing of the individual plaintiffs to bring their own claims against certain defendants was in doubt. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) ("Here, no named plaintiff can trace the alleged injury in fact-payment of usurious interest rates-to all of the Trust Defendants, but only to the Trust Defendant that holds or held that plaintiff's note. . . . The Trust Defendants are not juridically linked, and Borrowers cannot acquire standing to sue those defendants who do not now hold and have never held a named plaintiff's loan through the juridical links doctrine."); *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997) ("None of the Plaintiffs can assert an 'injury in fact' resulting from the alleged equal protection, due process, Americans with Disabilities Act, or Rehabilitation Act violations."). As Harley-Davidson acknowledges, *see* Reply (dkt. 48) at 13, this Court has previously deferred issues of class standing for the class certification phase under more analogous circumstances. *Senne v. Kan. City Royals Baseball Corp.*, 114 F. Supp. 3d 906, 921–25 (2015). The Court follows that approach here, and reserves all questions of the scope of the class that Garcia might be able to represent to be addressed in the context of class certification.

## IV. CONCLUSION

For the reasons discussed above, Harley-Davidson's motion is GRANTED as to Garcia's UCL claim to the extent that it is based on affirmative misrepresentations and as to his claim for breach of express warranty, which are DISMISSED with leave to amend. The motion is also GRANTED as to Garcia's UCC implied warranty claim, which is DISMISSED with prejudice. The motion is otherwise DENIED. If Garcia wishes to pursue a claim based on affirmative misrepresentations, he may file a second amended complaint no later than December 6, 2019. Garcia may move for leave to amend later in the case if he becomes aware of evidence supporting a claim for breach of express warranty.

**IT IS SO ORDERED.**

Dated: November 15, 2019

JOSEPH C. SPERO
Chief Magistrate Judge